RECEIVED

'12

CITY CLERK OFFICE

# KLENDA AUSTERMAN LLC

Attorneys At Law

Gary M. Austerman
John V. Wachtel, IV
J. Michael Morris
Jeffrey D. Peier
Scott A. Eads
John B. Gilliam
Gregory B. Klenda
Christopher A. McElgunn
Todd E. Shadid
Chad S. Nelson
❖ Christopher J. Vinduska
David W. Steed
Michelle L. Brenwald
Chasity M. Helm

1600 Epic Center, 301 N. Main
Wichita, Kansas 67202-4816

Telephone: (316) 267-0331
Telefacsimile: (316) 267-0333

www.KlendaLaw.com

Michael L. Baumberger ❖
M. Blake Cooper
Samuel R. Foreman
Aaron J. Good
Eric W. Lomas

Of Counsel
Robert W. Kaplan
James A. Thompson
Carlos J. Nolla-Corretjer

❖ Licensed also in Missouri

L.D. Klenda (1937-1996)
Bruce W. Zuercher (1931-2008)

August 28, 2012

# NOTICE PURSUANT TO K.S.A. 12-105b

VIA CERTIFIED US MAIL and HAND DELIVERED

City of Wichita
Clerk of the City of Wichita
455 North Main
Wichita, Kansas 67202

*Re: Notice of Claim brought pursuant to K.S.A. 12-105b by Lakeda Dixon, individually, and as the Next Friend and Mother of Jayleon and Kyla Dixon, and as Special Administrator of the Estate of Jerome Dixon.*

Clerk of the City of Wichita:

The purpose of this letter is to place the City of Wichita on notice not to destroy documents and to provide five specific pieces of information which include:

1) The name and address of our client, the claimant, and our firm;
2) A *concise statement* of the facts including the date, time, place and circumstances revolving around the event complained of;
3) The name and address (if known) of the City Employee(s) involved in the incident;
4) A concise statement of the nature and injury claimed; and
5) A statement of the monetary damages being requested.

*See* K.S.A 12-105b (emphasis added).

1.      Name and Address of Claimant and Law Firm:

Mrs. Lakeda Dixon, who resides at 4912 E. New Jersey #901, Wichita, Kansas 67210, brings this claim on behalf of herself, her children, Jayleon and Kyla, and the estate of her deceased husband Jerome Dixon. Mrs. Dixon, Mrs. Dixon's children, and the Estate of Jerome Dixon, are represented

EXHIBIT 6

Page 1 of 5

by James A. Thompson of the law firm of Klenda Austerman LLC, 301 N. Main, Ste. 1600, Wichita, KS 67202. Please send all correspondence and communications through Mr. Thompson.

## 2. Factual Basis of Claim

On Friday, November 5th, 2010, Jerome Dixon and his wife, Lakeda Dixon, returned to their home at 4818 E. New Jersey, #102, after attending the funeral of Lakeda's grandfather. Jerome and Lakeda spent much of the day after the funeral at Lakeda's grandmother's house. After returning home, at approximately fifteen minutes before midnight, Lakeda asked Jerome to remove his handgun from the house because they had several relatives in town for the funeral staying at the apartment, in addition to their own children. Upon Lakeda's request, Jerome retrieved the gun and went to the front door of the apartment to go outside and place it in their vehicle.

Around this same time, two Wichita Police Department officers arrived at the apartment complex after being dispatched to respond to a noise complaint of loud music at Lakeda and Jerome's apartment.[1] At some time after 11:48 p.m., the two unnamed officers, Officer 1 and Officer 2, approached the apartment. Officer 1 states he approached a window on the front of the apartment in an attempt to look in the window on the left side of a small concrete porch. Officer 2 stepped onto the porch in front of the apartment door.

As Officer 2 approached the front door of the apartment, Jerome and Lakeda did not know that officers were outside of their apartment. Jerome opened the front door from within the apartment while holding the gun in his right hand. The gun was below his waist and pointing down by his right side. At this time, Jerome was facing inside the apartment, speaking with Lakeda as he opened the door with his left hand to go outside. Officer 2, standing on the porch outside of the door and without any warning or announcement that they were the police, drew his weapon and fired four times at Jerome, hitting him with all four shots. One bullet struck Jerome in the chest and perforated his heart, with the other three striking him at various points along his left arm, which was raised in a defensive posture as fell away from the firing officer. The stippling on Jerome's left sleeve and tie show that Officer 2 was located on Jerome's left side and away from the gun. Officer 2 admits Jerome never raised his weapon or pointed it at him or anyone else. Jerome Dixon died shortly thereafter as a result of the wounds he sustained from the shots fired by Officer 2.

According to Lakeda, Jerome made a statement about going to get cigarettes as he approached the front door with the gun. Lakeda does not recall hearing an officer yell for Jerome to "drop the gun" before hearing the gunshots.

Lakeda's version of the events that night is supported by the account of Longe "Joe" Lukalema, a neighbor who witnessed the event. Mr. Lukalema was returning to his home after taking trash to the dumpster, and was approximately forty feet from the front door of apartment #102 when the shooting occurred. Mr. Lukalema's affidavit states the officers did not announce themselves or yell for

---

[1] The officers' statements and version events are taken from the report of the Sedgwick County District Attorney's report and investigation.

Jerome to drop the gun before opening fire and killing Jerome.

After the officer shot Jerome and despite having done nothing wrong, Lakeda and her children were forced to leave the residence and go down town for a night of interrogations regarding the shooting. They were not allowed to leave and were kept against their will.

The autopsy report contradicts the officers' story that Jerome was directly facing him. The angle of the bullets show the officer was on Jerome's left side away from the gun. The bullet traveled from left to right and down and lodged next to his lower rib on his back. The autopsy does support Lakeda's version that Jerome was turned towards her speaking to her when he was shot.

Since the Officers did not know who Jerome was, Jerome was not personally suspected of any crime at the time of the shooting, or at worst they may have suspected him of excessive noise. The officers had no reason to believe that Jerome's possession and handling of the gun anything other than lawful, and his possession posed no immediate threat to the officers as it was pointed down at the ground and was below Jerome's waist on his right side away from the officer that shot him. He was not brandishing the weapon, or pointing it at anyone. Finally, he was not actively resisting arrest or attempting to avoid capture.

Based on these facts, at best, Officer 2 was startled and acted negligently in shooting Jerome Dixon. At worst, Officer 2 acted with deliberate indifference to Jerome Dixon's constitutional rights. Officer 2's use of deadly force and failure to announce himself and warn Jerome Dixon to drop the gun before he shot Jerome constitutes an unreasonable use of deadly force and forms the basis for this claim. Officer 2's actions amount to negligence and excessive force in violation of state and federal law. The shooting in front of Lakeda, Kyla and Jayleon is also negligenct infliction of emotional distress. The forced removal of Lakeda and her children amounts to false imprisonment. The City of Wichita, as the employer of the two officers, is liable through respondeat superior as well as for its failure to properly train the Wichita Police Department Officers in the use of deadly force as evidenced by the numerous officer involved shootings in Wichita.

### 3. Name of Public Officers involved (as known to date):

Two unnamed Wichita Police Department Officers. The names of these officers was not released but may be ascertained by contacting the Wichita Police Department at 455 North Main, Wichita, Kansas 67202. Other officers may have been involved with unlawfully detaining Mrs. Dixon and her children.

### 4. Injury Sustained:

*Jerome Dixon*

According to an autopsy conducted by the Sedgwick County District Coroner, Mr. Dixon died as a result of multiple gunshot wounds to the chest and left arm. It is undisputed that the bullets which

killed Mr. Dixon were fired by an unnamed Wichita Police Department officer. Mr. Dixon initially survived the shooting but eventually succumbed to his wounds. Prior to his death, Mr. Dixon experienced the conscious fear and pain of being shot in the doorway of his home.

*Lakeda Dixon*

Mrs. Dixon is now left with the prospect of raising two children alone. She lost her husband, lover, friend, companion, and the father of her children. Jerome was a stay at home dad who performed the household chores and took care of the children while Lakeda worked. Now she must find a way to maintain her home, make sure the children have day-care, and otherwise make up for the loss of her husband's services around the house. Lakeda Dixon watched her husband get shot in her doorway and saw him fall backward onto the stairs of their home. Lakeda suffered emotional damages from witnessing the shooting death of her husband as well as the pain and suffering caused by the wrongful death of her husband. Lakeda also suffered financial loss as well in the loss of her husband's advice and counsel and provision of household services. Lakeda also suffered an unlawful detention and imprisonment by Wichita Police Department officers investigating the shooting.

*Jayleon and Kyla Dixon*

Jayleon and Kyla were 7 and 3 respectively when their father was shot. Kyla witnessed the shooting and Jayleon heard his father get shot and saw the aftermath. Jayleon and Kyla were forced to walk past their father as paramedics worked on him in their doorway. Due to the Officer's negligent use of deadly force, Jayleon and Kyla have now lost the love and guidance of their father who was very involved in their lives. He attended parent/ teacher conferences at the children's school and provided a stable home for them to grow up in. Jerome was very involved with his children at their school. The children suffered the emotional trauma of seeing their father shot and having to walk past him dying in the doorway of their home as the police forced them to leave the premises. The children also suffered economic damages in the form of lost guidance and counsel. Finally, the children suffered the pain and suffering associated with the wrongful death of their father. Jayleon and Kyla also suffered an unlawful detention and imprisonment by Wichita Police Department officers investigating the shooting.

5.  **Damages Requested:**

At this time, Mrs. Dixon requests $4,296,120.00 as monetary damages to resolve this claim. This represents $1,432,040.00 for Future Economic loss of services performed by Jerome for his wife and his children and is based on a life expectancy of 40 years at $35,801.00 per year. In addition, the following pain and suffering damages are included as well for Jerome, Lakeda, Jayleon and Kyla: $2,864,080.00.

6.  **Document Preservation:**

At this time, the City of Wichita is placed on notice to please preserve all documents that in any way relate to the incident outlined in this 12-105b notice letter.

**Conclusion:**

Mrs. Dixon is willing to forego litigation to bring this matter to a swift and final conclusion. Mrs. Dixon hopes the City will use the time period provided by K.S.A. 12-105b to enter into good faith settlement negotiations. If the City of Wichita is unwilling to settle the claims of Mrs. Dixon then she will fully pursue all remedies under the law available to her, her children and Jerome's estate, including claims and attorney fees for violation of Lakeda's, Jerome's and their children's' civil rights, as well as the state law claims outlined above.

Thank you for your immediate and prompt attention in this matter. Please feel free to contact me if you have any questions.

Sincerely,

James A. Thompson, KS/SC #21263

**KlendaAusterman**
ATTORNEYS AT LAW

1600 Epic Center
301 North Main Street
Wichita, Kansas 67202-4816
Telephone - 316-267-0331
Facsimile - 316-267-0333
www.KlendaLaw.com

I have read and approved this settlement demand required by K.S.A. 12-105b.

Lakeda Dixon, individually, as next friend
And mother of Jayleon and Kyla Dixon, and
As Special Administrator of the
Estate of Jerome Dixon